Hohensee and others, Respondents, vs. Acheson, Appellant.

*November 8—December 5, 1933.*

*Thomas E. Torphy* of Milwaukee, for the appellant.

For the respondents there was a brief by *Lorenz & Lorenz* and *Herbert L. Mount,* all of Milwaukee, and oral argument by *Mr. Mount* and *Mr. Ira S. Lorenz.*

NELSON, J. The collision between defendant's truck and the conveyor part of plaintiffs' ditcher occurred on Blue Mound road in the city of Milwaukee on June 28, 1930, at about two o'clock in the afternoon. The day was clear. Blue Mound road at the place of the accident is forty-one feet wide from curb to curb and paved with asphalt. It runs in an easterly and westerly direction. Certain poles existed on the highway between the south curb and the sidewalk. These poles were located about one foot from the curb. The plaintiffs' ditcher, loaded upon a low trailer twelve feet wide and thirty-two feet long, was being pulled by a truck in an easterly direction. The ditcher was about thirty feet long, not including the overhanging excavator part of the machine which extended beyond the rear of the trailer a distance of about twenty-five feet. The conveyor, which was twenty-six feet long and weighed about three and a half tons, was a part of the ditcher and ran crosswise at right angles to it, at a height of about nine feet above the pavement, so that an ordinary automobile could pass beneath it. The ends of the conveyor extended about seven feet beyond each side of the trailer. Just prior to and at the time of the collision the left wheels of the truck which was pulling the trailer were about two feet from the center line of the highway. The left wheels of the trailer were about at the center line. The north end of the conveyor extended

over the center line about seven feet. That part of the conveyor which extended over the center line was of such dimensions as to make it clearly visible to any one approaching it. The outfit was accompanied by two employees of the plaintiffs whose duty it was to warn other users of the highway with respect to the presence of the ditcher on the highway. Just prior to the collision the defendant's truck was being driven on the north side of the highway in a westerly direction. The driver of the truck testified that he did not observe the end of the conveyor extending over the center line of the highway until possibly within thirty feet of it and did not observe or appreciate that plaintiffs' employees were attempting to warn him as to the danger of proceeding; that after seeing the end of the conveyor in front of him he thought he could clear it. The height of defendant's truck was such as not to permit it to pass under the conveyor, consequently the end of the conveyor came in contact with the upper left-hand front corner of the truck and thereafter grazed along its left side for several feet before the truck was stopped. As a consequence of the collision the conveyor was damaged. Before undertaking to transport the ditcher along the streets of the city of Milwaukee the plaintiffs applied to and received from the commissioner of public works of the city a permit to transport it pursuant to the provisions of sec. 85.53, Stats. 1929.

The jury found that the driver of defendant's truck just prior to the collision was negligent (1) as to maintaining a proper lookout, (2) as to stopping his truck in time to avoid a collision, (3) as to avoiding the collision by passing to the north of the conveyor, (4) that each of such failures to exercise ordinary care was an efficient cause of the collision, (5) that the plaintiffs' employees could reasonably have divided the load mounted on the trailer, (6) that such failure to divide the load was not an efficient cause of the collision, (7) that the plaintiffs were not negligent with respect to the manner in which the ditcher and conveyor were mounted

on the trailer, or (8) as to warning the defendant. The jury assessed plaintiffs' damages at the sum of $475.

Upon the coming in of the verdict the defendant made the usual motions for judgment, to change the answers, etc., and in the alternative for a new trial. The plaintiffs moved to change the answer of the jury which found that the plaintiffs' employees could reasonably have divided the load, from "Yes" to "No," and to change the answer of the jury assessing the damages, from $475 to $635.95, and for judgment on the verdict as so changed.

The plaintiffs' motion to change the answer which found that the ditcher could reasonably have been divided was granted. All other motions of the parties were denied. Judgment in favor of the plaintiffs for $475 was duly entered.

The defendant assigns as error the failure of the court (1) to direct a verdict in his favor, (2) to render judgment in his favor notwithstanding the verdict, (3) to change the answer of the jury which found that the failure of the plaintiffs' employees to divide the load was not an efficient cause of the collision, (4) to change the answers of the jury to questions 8a, 9a, and 10a, relating to the manner in which the ditcher and conveyor were mounted on the trailer, foreseeability, and efficient cause, and (5) to grant a new trial.

The defendant contends that transporting the ditcher along the highway with the conveyor extending over the center line violated secs. 85.15 (1), (4), and 85.45 (1), (2), and 85.65, Stats. 1929, and that said violations constituted proximate causes of the collision as a matter of law.

Sec. 85.15 (1) requires that upon all highways of sufficient width the operator of a vehicle shall operate the same upon the right half of the roadway; sec. 85.15 (4) requires the operators of vehicles proceeding in opposite directions to pass each other to the right, each giving the other at least one-half of the main traveled portion of the roadway as nearly as possible. Sec. 85.45 (1) and (2) so far as here

material prohibits the operating or moving on any highway of any vehicle of a size exceeding certain limitations therein stated, to wit, a vehicle including any load thereon exceeding a total outside width of eight feet, "except . . . that the limitations as to the size of vehicle stated in this section shall not apply to . . . those vehicles operating under special permits issued in accordance with section 85.53. . . ." Sec. 85.65 prohibits a motor vehicle from carrying "any load extending beyond the line of fender on the left side of such vehicle nor extending more than six inches beyond the line of the fender on the right side thereof. In the case of trucks the fender line shall be considered as the rear fender, flare boards or floor of body."

In considering whether defendant's contentions are sound we must first give consideration to the provisions of sec. 85.53 which relate to special permits for transporting loads of excessive size and weight and provide:

*"Special permits.* (1) *Permits for loads of excessive size and weight.* Whenever it is necessary to transport a single article which cannot reasonably be divided and which exceeds the maximum permissible weight or dimensions or both, the same shall be done only after the issuance of a special permit for a single trip designating the loads to be transported, pursuant to authority granted in this section.

"(2) The commissioner of public works in cities of the first class . . . are authorized in their discretion, upon proper application in writing, to grant such special permits for the moving of any such single article. . . ."

It is clear that sec. 85.53 authorizes the transportation of a single article which cannot reasonably be divided and which exceeds the maximum permissible weight or dimensions provided by law upon obtaining a permit for a single trip designating the load to be transported.

Sec. 85.15 (1), as we view it, has no application to the transportation along a highway of a single article which is being transported under a permit. Obviously the legislature

intended that single articles might be transported along a highway under a permit even though they occupy more than the right half of the roadway. Nor in our view does sec. 85.15 (4) apply to the transportation of such article under permit. The limitations found in sec. 85.45 (2), by express exception contained therein, do not apply to vehicles operating under special permits. We think also that the provisions of sec. 85.65 which relate to "loads on sides of vehicles" have no application to the transportation of a single article under permit.

The defendant further contends that since the jury in answer to question 6 found that the plaintiffs' employees could reasonably have divided the load mounted on the trailer, the permit was improperly issued and therefore said load was unlawfully upon the highway and constituted a nuisance to which the defendant owed no duty. This contention is not persuasive. So far as the record is concerned the permit was properly issued. The commissioner of public works was authorized in his discretion to issue it and, we think, to determine whether the single article to be transported could reasonably be divided. The finding of the jury that it could reasonably be divided was therefore immaterial. But even assuming that that finding was material, the jury found that such failure to divide the load was not an efficient cause of the collision.

In answering the several questions favorably to the plaintiffs the jury undoubtedly had in mind all of the facts and circumstances surrounding the collision. The jury, it seems to us, was justified in concluding that if the driver of defendant's truck had maintained a proper lookout he would have observed that he was approaching a large trailer on which was mounted a massive machine, the conveyor part of which extended across the center line of the road; that it was being transported at a slow rate of speed; and that, had the defendant's driver stopped his truck or passed to

the north of the conveyor, the collision would not have happened.

The defendant further contends that the court erred in not granting a new trial. That motion was based upon the refusal of the court to submit to the jury certain questions proposed by the defendant, the admission of certain evidence, the refusal of the court to charge the jury as requested, and finally the submission to the jury of certain questions containing the words: "Failure to stop his truck." "Failure to avoid the collision." We have examined the several grounds for a new trial asserted with the result that we regard them either as without merit in view of our conclusions hereinbefore expressed or as non-prejudicial.

The plaintiffs moved for a review of that part of the trial court's order which denied their motion to change the answer assessing damages. None of the evidence relating to the damages sustained was recited in the printed case so it has been necessary to examine the record for the purpose of determining whether the proof as to the damages sustained is so clear and certain as to require us to increase them from $475 to $635.95. The trial court refused to increase the damages. The proof as to damages is, in our opinion, not so clear and certain as to require us to increase them. Some of the evidence relating to damages, as it appears in the record, does not seem to be of that clear, candid, and definite character which required the jury to believe it. Particularly is this true with respect to the conveyor belt. There was considerable uncertainty as to when it was purchased, how much it had been used, and how much it had depreciated at the time of the collision. The trial court had all of this evidence in mind and approved the damages found by the jury. Under the circumstances plaintiffs' motion must be denied.

*By the Court.*—Judgment affirmed.